**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ROXANE TORRES**, individually and
on behalf of all similarly situated
individuals,

        Plaintiffs,

vs.                         **CASE NO: 8:16-CV-01970-JSM-MAP**

**NATURE COAST HOME CARE, LLC,**
a Florida limited liability company,

        Defendant.

_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR REMEDIAL CLASS NOTICE, TO RE-OPEN THE**
**OPT-IN PERIOD, AND FOR SANCTIONS**

      Defendant, NATURE COAST HOME CARE, LLC (hereinafter referred to as

"Nature Coast"), by and through the undersigned counsel, files this, its *Response In*

*Opposition to Plaintiffs' Motion for Remedial Class Notice, to Re-Open the Opt-In Period,*

*and for Sanctions,* and in support thereof states as follows:

    **I.**      **INTRODUCTION.**

      This is an action for unpaid overtime wages pursuant to the Fair Labor Standards

Act (FLSA), 29 U.S.C.A. § 201 (West), et. seq., brought by the Plaintiff, a home health

aide employed by the Defendant. *Plaintiffs' Motion for Remedial Class Notice, to Re-Open*

*the Opt-In Period, and for Sanctions* (Doc. 68) seeks a remedial class notice, extended opt-

in period, and monetary sanctions. For the reasons set forth herein, Plaintiff's motion

should be denied. Despite Plaintiff's representations to the contrary, Defendant has not

engaged in any egregious conduct or undertaken any systemic effort to undermine this

00680610                    1 of 15

litigation or any potential opt-in plaintiff's opportunity to participate in this litigation. Potential plaintiffs received accurate and timely notice, and have had sixty days in which to opt-in into this litigation. To extend the opt-in period and afford Plaintiff an opportunity for yet another notice, and more time, is not only unwarranted but also unjust under the circumstances.

## II.     PROCEDURAL HISTORY

### A.  *Initial and Amended Conditional Class Certification.*

On October 27, 2017, the Court granted conditional class certification (Doc. 24; Doc. 30). The Court conditionally certified a class of:

> "all **current and former home health aides** employed by Nature Coast Home Care, LLC who were:(1) employed at any time during the period of time from July 5, 2013, to January 1, 2015, and not paid overtime for any hours worked over 40 hours in a workweek and, in that same week that more than 40 hours were worked, more than 20 percent of the time was spent on general household work; and/or (2) employed at any time during the period of time from after January 1, 2015, up to and including the present, and not paid overtime for any hours worked over 40 hours in a workweek." (emphasis added) (Doc. 24, ¶2).

In accordance with the Order approving the conditional class definition, by October 21, 2016, Defendant served on Plaintiff an Initial Conditional Class List of certified home health aides, approximately six (6) people ("Initial Conditional Class List"). The Initial Opt-In Notice Period for the Initial Conditional Class Definition commenced October 2017 was open for sixty days, and concluded on or about December 2016.

On December 1, 2016, the parties held a status conference regarding Plaintiff's allegations as to the completeness of the Initial Conditional Class List (Doc. 37). The issue in dispute related to whether or not the Initial Conditional Class Definition which limited the class to certified home health aides, was meant to include certified nursing assistants

and companions. The parties negotiated an amended conditional class definition, and filed a Joint Motion to Amend Conditional Class Certification on April 21, 2017 (Doc. 46); and the court granted the motion the same day (Doc. 47). The Amended Conditional Class Definition expanded the job classifications from solely certified home health aides, to certified home health aides, companions, and certified nursing assistants. The Amended Conditional Class Definition is,

> "all current and former **certified home health aides**, **companions, and certified nursing assistants** employed by Nature Coast Home Care, LLC who were:(1) employed by Nature Coast Home Care, LLC, who were employed at any time on or after January 1, 2015, up to and including the present, and not paid overtime for any hours worked over 40 hours in a workweek" (emphasis added) (Doc. 46, ¶5a).

In accordance with the Order on the Joint Motion (Doc. 47), on May 22, 2017, the Defendant served on Plaintiff an Amended Conditional Class List identifying 293 current and former employees, including the six individuals on the Initial Conditional Class List, in certified home health aide, certified nursing assistant and companion job classifications. This list included names, home addresses, job titles, and dates of hire for current employees, and dates of termination for former employees. The information contained in the Amended Conditional Class List was sufficient to distribute opt-in notices.

Plaintiff filed a Motion for Status Conference (Doc. 57) on June 13, 2017 regarding the inclusion of email addresses in the Amended Conditional Class List. Defendant filed its Response to Plaintiff's Motion for Status Conference on June 20, 2017 (Doc. 62), and the Court entered an order denying the motion as moot (Doc. 63). An updated Amended Conditional Class List was served on Plaintiff on June 20, 2017 and June 22, 2017. The first update was to provide both dates of hire and dates of termination for former

employees. The second update was to add email addresses for those individuals identified on the original Amended Class List. The Second Opt-In Notice Period for the 293 individuals listed on the Amended Conditional Class List commenced on or about May 24, 2017 and ended on July 31, 2017.  The Second Opt-in Notice period has closed, and as of today, there remains a conditional class certification with twenty-eight (28) Opt-In plaintiffs.

On July 20, 2017, Defendant was served with Plaintiff's consolidated Discovery Requests. On or about August 21, 2017, Defendant served its Response to Plaintiff's Consolidated Discovery Requests.  During the Initial Opt-in Notice Period, and the Second Opt-in Notice Period, Defendants worked diligently to timely respond with limited discovery responses, e.g. hours worked, earnings, and payments, for each Opt-In Plaintiff. In its response, Defendant noted that it would supplement its response as discovery was ongoing. On August 24, 2017, Defendant served an initial set of responsive documents on Plaintiff. On September 6, 2017, Defendant served its Amended and Supplemental Response to Plaintiff's Consolidated Discovery Requests, and additional responsive documents. To date, Defendant has produced five-hundred and fifty pages of responsive documents, responded to twenty-two admissions, and answered thirteen interrogatories. At no time has the Defendant refused to respond to discovery, engaged in any dilatory tactics or intentionally withheld any responsive documents identified at the time a response was due.

### III.     RELEVANT FACTUAL BACKGROUND

Defendant did not engage in any egregious conduct or systemic effort to disrupt the

class process nor to deprive any potential opt-in plaintiff of their right to participate in this litigation. In her motion, Plaintiff raises allegations of improper communications with opt-in plaintiffs, and illegal settlements. In particular, Plaintiff cites four specific individuals – Taquintaey Marks, Patrenia Harris, Rosheka Woods and Constance Ible - and their related circumstances as its justification for seeking a remedial notice, and an extended notice period. Plaintiff relies on these four individuals, out of a total 293 potential opt-in plaintiffs, to demonstrate alleged conduct warranting their requested relief. In fact, much of the allegations contained in the Plaintiff's Motion with regard to the conduct of the Defendant is either a gross exaggeration of the facts or insinuation of improper conduct not based in fact.

A. *Taquintaey Marks*

Taquintaey Marks ("Marks") was employed by the Defendant as a certified home health aide from November 3, 2015 to February 1, 2017. Marks ceased working for the Defendant prior to approval of the Amended Conditional Class Definition. Contrary to the allegations contained in Plaintiff's Motion (Doc. 68-10), Marks was disclosed as a certified home health aide on the Initial Conditional Class List served upon Plaintiffs. On or about December 2016, Marks, voluntarily and on her own initiative, contacted the Defendant seeking payment of any wages she may have been due. At that time, although Marks was identified on the Initial Conditional Class List, she had not filed an opt-in notice opting into this litigation. At Marks' request, Defendant calculated overtime wages, provided her with the basis and explanation of the wage amount calculated and paid her. As disclosed in Defendants discovery response, on or about December 2016 Marks was paid gross

wages of $167.88 for retroactive wages for overtime. The hours worked were not disputed, and the overtime wages calculated were neither in dispute nor a compromise of what she was due under the new homecare overtime rules. In addition, Marks did not sign any settlement agreement or release. Notwithstanding this payment of retroactive overtime wages, Marks was included on the Amended Conditional Class List served on Plaintiff on May 22, 2017, and as part of the expanded Amended Conditional Class, she would have received an Opt-In Notice in May 2017.

B. *Patrenia Harris*

Patrenia Harris ("Harris") was employed with Defendant as a certified nursing assistant (CNA) from December 7, 2016 to December 27, 2016. Harris ceased working for the Defendant prior to approval of the Amended Conditional Class Definition. Contrary to the erroneous allegations Plaintiff raises in her Motion, Harris was not omitted from the Initial Conditional Class List. Harris was not included on the Initial Conditional Class List because she was a CNA, and the Initial Conditional Class List contained only certified home health aides. On or about December 2016, Harris, voluntarily and on her own initiative, contacted the Defendant seeking payment of any wages she may have been due. At that time, Harris was not a member of the Initial Conditional Class and had not opted-in to this litigation. At Harris' request, the Defendant calculated overtime wages, provided her with the basis and explanation of the wage amount calculated and paid her. As disclosed in Defendants discovery response, on or about December 16, 2016, Harris was paid gross wages of $464.22 for retroactive overtime wages. The hours worked were not disputed, and the overtime wages calculated were neither in dispute nor a compromise of what she

was due under the new homecare overtime rules. She was paid in full. Notwithstanding the fact that Harris had already received payment in full and signed a two-sentence acknowledgement and release, Harris was included on the Amended Conditional Class List served on Plaintiff on May 22, 2017, and as part of the expanded class, she would have received an Opt In Notice in May 2017.

C. *Rosheka Woods*

Rosheka Woods ("Woods") was employed by Defendant as a companion from April 21, 2015 to August 4, 2016. Woods ceased working for the Defendant prior to approval of the Amended Conditional Class Definition. Woods was not included on the Initial Conditional Class List because she was a companion, and the Initial Conditional Class List contained only certified home health aides. On or about June 13, 2017, Woods filed her Opt-in notice (Doc. 56-2). On or about July 18, 2017, Woods, voluntarily and on her own initiative, contacted the Defendant seeking payment of any wages she may have been due. However, as Woods had already filed her Opt-in Notice, Defendant informed Woods, that since she had opted-in she was represented by counsel and the Defendant could not speak with her about her wage claim. At no time, did Defendant's attorney speak with Woods and at no time did Defendant entered into any FLSA settlement discussions with Woods.

Woods has also alleged that her "cousin" received a payment of $2000; and therefore, neither she nor her cousin wanted to opt-in to the litigation. (Woods has in fact opted-in to the litigation.) These allegations are nothing more than hearsay two times over – Woods' told Plaintiff's counsel what her cousin told her. Defendant was apprised of this

allegation in correspondence from opposing counsel dated July 21, 2017 (Doc 68-4). Defendant has repeatedly denied making a $2000 payment to any potential opt-in plaintiff. Defendant has previously addressed this allegation on two separate occasions in its response to the correspondence noted above (Doc. 68-5) and in its discovery responses.

Furthermore, Plaintiff has failed to provide Defendant with a name of a particular person, she simply offers "Woods' cousin" as an identifier. Defendant does not ordinarily know "familial" relations of its employees, and cannot respond any further to this allegation without knowing the name of the alleged individual. Without knowing the specific name of the individual Defendant is alleged to have paid, Defendant cannot produce a responsive payroll earnings record to support the fact that it has not paid out any settlement to this alleged individual. To use Woods and "her cousin" as a basis to support alleged interference on the part of the Defendant is erroneous and improper.

D. *Courtney Ible*

Courtney Ible ("Ible") was employed by Defendant as a companion from May 11, 2015 to April 13, 2017. Despite work being offered, Ible routinely declined offered shifts and eventually ceased working for Defendant prior to approval of the Amended Conditional Class Definition. Ible was not included on the Initial Conditional Class List because she was a companion, and the Initial Conditional Class List contained only certified home health aides. On or about July 24, 2017, Ible filed her Opt-in notice (Doc. 67-4).

Ible's Declaration (Doc 68-6) makes several statements that are highly disputed by Defendant. Ible was compensated for all hours worked, and at no time did Defendant or its

representatives, including Nancy Camp, extend Ible any offer to settle her alleged wage and hour claim. The alleged event as reflected in Ible's Declaration in which Ible complained to "Nancy" about being due overtime wages and the resulting alleged settlement offer of $500 did not in fact happen. Several individuals employed by Defendant including Andrea Read, Nancy Camp, Patria Owens and TJ Hedick recall this incident very differently.[1] There was no coercion or intimidation or retaliation on the part of the Defendant, but Ible's conduct warranted law enforcement intervention.

On or about May 3, 2017, Ible showed up at Defendant's principal office demanding the employer complete certain documents for Ible's unemployment claim. In the course of that interaction, Ible became upset, began to yell, and became unruly. Her conduct was such that Defendant was forced to contact law enforcement to have Ible escorted from the premises as she refused to calm down or leave the premise.[2] Another individual, Patria Owens, observed this incident and the conversation between Ible and Nancy Camp. In fact, TJ Hedick was not present during the initial incident, it was not until after law enforcement was called that TJ Hedick arrived. At no time during this incident, did Defendant engaged in any settlement offer or offer of payment to Ible for any alleged wages she may be due.

There has been no conduct on the part of the Defendant to disrupt, taint or otherwise hinder or dissuade any of the 293 potential opt-in plaintiffs from participating in the class. In fact, all four individuals the Plaintiff cites as being examples of why an

---

[1] See statements from Nancy Camp, Patria Owens, and TJ Hedick
[2] See Exhibit A – Hernando County Sheriff Incident Report HCSO 2017:115558

expanded notice period is warranted, were all included in the Amended Conditional Class List and were eligible to opt-in during the entire Second Opt-in Notice Period; and two filed their respective opt-in notices.

**IV.   ARGUMENT**

Defendant did not enter into any illegal FLSA claim settlements; and Defendant did not engage in any communication or conduct that would discourage or dissuade potential opt-in plaintiffs for electing be part of this litigation.

In collective actions under the FLSA, the 11th Circuit has recommended a two-phased process. *Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240 (11th Cir. 2003). The first step of the analysis is the "notice stage" in which the court determines (a) whether there are other employees who desire to opt-in to the case, and (b) whether they are similarly situated. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008); *Dybach v. State of Fla. Dept. of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991). The notice phase of this case closed on July 31, 2017. There were two separate notice periods in this case. The Initial Opt-In Notice Period commenced in October 2016 and extended through December 2016. The Second Opt-In Notice Period commenced on May 2016 and ran through July 31, 2017. Yet, Plaintiff seeks an unwarranted third notice period.

At no time during either of the Opt In Notice Periods did Defendant engage in any conduct that disrupted, tainted or otherwise interfered with a potential opt-in plaintiff's choice to opt-in to this litigation. Plaintiff relies on *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dept. of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d

1350 (11th Cir. 1982) and *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013) to claim

that "illegal settlements" outside the collective action process warrant a new notice and

extended opt-in period. However, although Defendant may have paid two individuals'

retroactive overtime wages during the course of the litigation, both individuals were

included on the Amended Conditional Class List and both individuals had an opportunity

to receive an opt-in notice, and to opt-in to the litigation subsequent to the recent of any

retroactive overtime wage payment. Furthermore, the amounts paid to Marks and Harris

were undisputed and without compromise; they were paid in full for any and all wages,

including overtime they would have been due with or without the litigation. Although the

11th Circuit generally requires a district court to review settlement agreements reached in

FLSA cases, the Middle District has construed *Lynn Food Stores* to require review only

where the settlement results in a compromise of a plaintiff's claim. See *Bonetti v. Embarq*

*Mgmt. Co.*, 715 F. Supp. 2d 1222 (M.D. Fla. 2009). The amounts Marks and Harris

received were not a compromise; they were paid in full. In addition, neither of the two

individuals that received retroactive overtime payments entered into any formal settlement

agreement, regarding a FLSA disputed claim, containing any exhaustive release or waiver.

Defendant did not engage in any improper communications with any of the

potential opt-in plaintiffs. Plaintiff argues that by communicating with Marks and Harris

Defendant engaged in conduct intruding on the attorney-client relationship granted by class

certification. However, an attorney-client relationship is created with class counsel only

*after* an employee opts-in to the case. *Scott v. Chipotle Mexican Grill, Inc.*, 12-CV-08333

ALC SN, 2014 WL 4852063 (S.D.N.Y. Sept. 29, 2014). With regard to Marks, she was a

potential opt-in member of a conditional class, and not an opt-in member of a certified class. Harris was not a member of the conditional class at the time she approached the Defendant to be paid her alleged wages owed; therefore, she would not have been part of any attorney-client relationship at the time her retroactive wage payments were made. It was not until April 2017, when the Amended Conditional Class was approved, that Harris would have become part of the possible class.

Furthermore, when opt-in plaintiff Woods approached the Defendant seeking to be paid now, rather than have to wait on the conclusion of the litigation, Defendant expressly informed her that it could not communicate with her about her FLSA claim because she was represented. For the Defendant to take this action with Woods and to be accused of doing the exact opposite with another opt-in plaintiff (Ible) makes no rational sense whatsoever.

The benefits of a collective action "depend on employees receiving accurate and timely notice ... so that they can make informed decisions about whether to participate." *Morgan*, 551 F.3d at 1259. *(See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).)* In this case, all four individuals Marks, Harris, Woods, and Ible, received accurate and timely notice and were afforded an opportunity to opt-in; and two have them actually have filed opt-in notices with the Court. To permit the use of these four individuals, out of a total potential class size of 293, as a basis to seek a remdial notice, and a third opt-in notice period is improper and unjust.

Defendant has not engaged in any conduct or communication with any potential opt-in plaintiff that would warrant sanctions. Plaintiff cites no legal basis for seeking

sanctions. Sanctions are not warranted if Defendant's conduct is merely negligent, and does not arise from willful or bad faith conduct. *Williams v. R.W. Cannon, Inc.*, 71 Fed. R. Serv. 3d 986 (S.D. Fla. 2008). Defendant has not engaged in any negligent, willful or bad faith conduct. No potential opt-in plaintiff for the Amended Conditional Class has been harmed or interfered with during the Second Opt-in Notice Period. In fact, because the Defendant has refused to discuss FLSA payments with any of the individuals who have opted-in to the conditional class, Defendant is having to deal with irate individuals who desire to have their wages paid now, rather than wait for the conclusion of the litigation.

Plaintiff seeks relief that is unsubstantiated, and unwarranted. Potential Opt-In Plaintiffs have had sufficient time to opt-in, and any conduct on the part of the Defendant nearly one year ago, and more than five months prior to the Amended Conditional Class Certification (and Second Opt-in Notice Period), is too far in time to have had any effect on any potential opt-in plaintiff. Furthermore, the allegations on which the Plaintiff relies is for the most part hearsay, and unsubstantiated facts that remain in dispute.

## V.   CONCLUSION.

The *Plaintiff's Motion for Remedial Class Notice, to Re-Open the Opt-In Period, and for Sanctions* (Doc. 68) should be denied for the reasons set forth herein. Defendant has not engaged in any egregious conduct or undertaken any systemic effort to undermine this litigation or any potential opt-in plaintiff's opportunity to participate in this litigation. Defendant has not entered into any illegal settlements that would warrant the relief sought by the Plaintiff. Furthermore, Defendant has not engaged in any conduct or communication that would warrant sanctions. Two-hundred and ninety-three (293) potential opt-in

plaintiffs have had sixty days in which to opt-in into this litigation, and to extend the opt-in period and afford Plaintiff an opportunity for yet another notice, and more time, is not only unwarranted but also unjust under the circumstances.

Defendant respectfully requests that this court deny the Plaintiff's Motion, deny the Plaintiff's request for a remedial notice and extended opt-in notice period, and deny the Plaintiff's request for sanctions.

Respectfully Submitted,

*/s/ Jennifer C. Rey*
**JENNIFER C. REY, ESQ.**
Florida Bar No. 0041997
Trial Counsel for the Defendant
THE HOGAN LAW FIRM, LLC
Post Office Box 485
Brooksville, FL 34605
Telephone: (352) 799-8423
Facsimile: (352) 799-8294
jennifer@hoganlawfirm.com
Secondary Email:
scooke@hoganlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 25th day of September, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: William F. Cash, III, e-mail: <u>bcash@levinlaw.com</u> and Brandon Bogle, e-mail: <u>bbogle@levinlaw.com</u>, of Levin Papantonio, 316 S. Baylen Street, Suite 600, Pensacola, Florida 32502.

*/s/ Jennifer C. Rey*
**JENNIFER C. REY, ESQ.**
Florida Bar No. 0041997
